UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Evelyn Lossia,

       Plaintiff,

v.                              Case No.: 11-12607
                                     Honorable Sean F. Cox

Detroit Board of Education, *et al.*,

       Defendants.

_____/

**OPINION & ORDER**
**GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

       Plaintiff, a teacher employed by the Detroit Public Schools ("DPS"), brought this action asserting multiple claims against the DPS, the Detroit Board of Education ("the Board"), and various individuals employed by the DPS.  The matter is currently before the Court on Defendants' Motion for Summary Judgment, filed after the close of discovery.  The Court finds that the issues have been adequately presented in the parties' briefs and that oral argument would not significantly aid the decisional process.  *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan.  The Court therefore orders that the motion will be decided upon the briefs.      Plaintiff now agrees that three of the fifteen counts in her Amended Complaint should be dismissed.  With respect to the remaining claims, the Court shall grant summary judgment in favor of Defendants for the reasons set forth below.

**BACKGROUND**

       Acting through Counsel, Plaintiff filed this action on June 15, 2011.  Plaintiff's Amended Complaint asserts claims against the following Defendants: 1) the Board; 2) the DPS; 3) Karen

Ridgeway; 4) Naomi Lewis; 5) Gladys Wallace; 6) Angela Broaden; 7) Ramon Jones; 8) Felicia

Baker; and 9) Laurie Washington.

Plaintiff's Amended Complaint, which spans fifty-one pages, contains fifteen different

counts.  The claims can be grouped together as follows.

## I.      Race Discrimination Claims Based Upon Disparate Treatment:

"Title VII (Racial Harassment) Against Detroit Public Schools and Detroit Board of Education" (Count II): wherein Plaintiff alleges disparate treatment in her employment, based upon her race.

"ELCRA (Racial Discrimination) Against All Defendants" (Count V):  wherein Plaintiff alleges disparate treatment in her employment, based upon her race.

## II.     Race Discrimination Based Upon A Hostile Work Environment:

"Title VII (Racial Harassment) Against Detroit Public Schools and Detroit Board of Education" (Count I): wherein Plaintiff alleges that, from September 2008 forward, she "has been subjected to a hostile work environment based upon her race, Caucasian." (Am. Compl. at 8).

"ELCRA (Racial Harassment) Against All Defendants Except For Defendants Ridgeway, Baker and Washington" (Count IV): wherein Plaintiff alleges that she has been subjected to a hostile work environment based upon on her race, Caucasian.

## III.    Statutory Retaliation Claims:

"Title VII (Retaliation) Against Detroit Public Schools and Detroit Board of Education" (Count III): wherein Plaintiff alleges that she engaged in protected activity when she complained of racial discrimination and harassment internally and by filing an EEOC complaint" and that, as a result of her protected activity, Defendants retaliated against her in various ways.

"ELCRA (Retaliation) Against All Defendants" (Count VI): wherein Plaintiff alleges that she engaged in protected activity when she complained of racial discrimination and harassment internally and by filing an EEOC complaint" and that, as a result of her protected activity, Defendants retaliated against her in various ways.

"ADA (Retaliation) Against Detroit Public Schools And Detroit Board of Education" (Count VII): wherein Plaintiff alleges that she "engaged in protected activity when she complained that her students, protected under the ADA, were being denied their rights to

the full utilization of or benefits from Defendants" and that, as a result of her protected activity, she "has been subjected to retaliation that would deter others from complaining about illegal discrimination and retaliation." (Am. Compl. at 24)

"PWDCRA (Retaliation) Against All Defendants" (Count VIII): wherein Plaintiff alleges that she engaged in protected activity when she complained that her students, protected under the PWDCRA, were being denied their rights to the full utilization of or benefit from Defendants" and that, as a result of her protected activity, Defendants retaliated against her in various ways. (Am. Compl. at 27).

"Rehabilitation Act (Retaliation) Against Detroit Public Schools And Detroit Board Of Education" (Count IX): wherein Plaintiff alleges that she "engaged in protected activity when she complained that her students, protected under the Rehabilitation Act and IDEA, were being denied their rights under the Rehabilitation Act and IDEA by Defendants" and that, as a result of her protected activity, Defendants retaliated against her in various ways.

"Michigan Whistleblower's Protection Act MCL § 15.361 Et Seq. Against Detroit Public Schools, Detroit Board Of Education, Defendant Angela Broaden And Laurie Washington" (Count XII): wherein Plaintiff alleges that in April of 2011 "Plaintiff was assaulted in her classroom by a student", and later by the student's parent. She alleges that "Defendant Broaden instructed her not to file a police report against the student regarding the assault", or against the parent, but that Plaintiff did file such reports and, thereafter, Defendants retaliated against her in various ways.

"Michigan Whistleblower's Protection Act MCL § 15.361 Et Seq. Against Detroit Public Schools, Detroit Board Of Education, Defendant Angela Broaden, Defendant Karen Ridgeway, and Felicia Baker" (Count XIII): wherein Plaintiff alleges that she made complaints to various governmental entities about the DPS and that, thereafter, Defendants retaliated against her in various ways.

## IV.    Alleged Constitutional Violations, Brought Under Section 1983:

"First Amendment Violation (42 USC § 1983) Against All Defendants" (Count X): wherein Plaintiff alleges that she engaged in "protected speech" on several occasions that was "about matters of public concern" and that, as a result of her protected activity, she has been subject to illegal retaliation.

"Fourteenth Amendment Violation (42 USC § 1983) Against Detroit Public Schools, Detroit Board Of Education, Naomi Lewis, Gladys Wallace, And Laurie Washington" (Count XI): wherein Plaintiff alleges that she was denied her due process rights during a hearing held by Defendants.

## V.    Wage Claims:

3

2:11-cv-12607-SFC-MJH   Doc # 72   Filed 01/31/13   Pg 4 of 21   Pg ID 1509

"FLSA Against Detroit Public Schools, Detroit Board Of Education, Defendant Angela Broaden And Felecia Baker" (Count XIV): wherein Plaintiff alleges Defendants violated the Fair Labor Standards Act.

"MMWA Against Detroit Public Schools, Detroit Board Of Education, Defendant Angela Broaden and Felecia Baker" (Count XV): wherein Plaintiff alleges that Defendants violated Michigan's Minimum Wage Act.

(Docket Entry No. 24).

After the close of discovery, which was extended several times, Defendants filed a

Motion for Summary Judgment.

Plaintiff was represented by Counsel from the inception of this case until November 2,

2012, when the Court allowed her Counsel to withdraw. (*See* Docket Entry No. 62). Plaintiff

filed a *pro se* response to Defendants' Motion for Summary Judgment. Plaintiff was given

additional time (i.e., a sixty-day extension) to respond to Defendants' motion. (*Id.*).

This Court's practice guidelines are included in the Scheduling Order and provide,

consistent with Fed. R. Civ. P. 56 (c) and (e), that:

a. The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .

b. In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts. The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.

c. All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

4

(Docket Entry No. 30 at 2-3). Defendants fully complied with the Court's practice guidelines for motions for summary judgment such that along with their motion, they filed a "Statement of Material Facts Not In Dispute" (Defendants' "Statement"). (Docket Entry No. 56). Despite her *pro se* status, Plaintiff also complied with the Court's guidelines. In addition to her Response Brief, Plaintiff also filed her "Response to Defendants' Statement Of Material Facts Not In Dispute" ("Plaintiff's "Statement"). (Docket Entry No. 69). In her Statement, Plaintiff stated that she did not dispute numerous portions of Defendants' Statement. Where she did dispute an allegation, she explained why and directed the Court to evidence in the record that she believes supports her position.

The following material facts are gleaned from the evidence submitted by the parties, taken in the light most favorable to Plaintiff, the nonmoving party.

Plaintiff's race is Caucasian. (Defs.' Stmt. at ¶ 3; Pl.'s Br. at 8; Pl.'s Stmt. at ¶ 3; Am. Compl. at ¶ 39). Plaintiff began her employment with the DPS in January 2004, as an English teacher at West Side Academy. (Defs.' Stmt. at ¶ ; Pl.'s Stmt. at ¶ ).

Plaintiff has worked at several different schools throughout her employment with the DPS. Plaintiff knew from the beginning of her employment that if she had a complaint of harassment or discrimination, she could complain to human resources or to the administration. (Pl.'s Dep. at 58).

Plaintiff first worked as special education teacher at Cody High School. (Pl.'s Dep. at 26). As a special education teacher, Plaintiff was responsible for the development of Individual Education Programs ("IEP"s) for her students as well as the management of the IEPs. (Defs.' Stmt. at ¶ 23; Pl.'s Stmt. at ¶ 23). Special education teachers, such as Plaintiff, led the IEP team

for each student which consisted of the special education teacher, a general education teacher, and administrator, and a parent of the student. Plaintiff's job responsibilities include notifying administration if she believed that an IEP was not done correctly or that DPS was not providing services in compliance with a special education student's IEP. (Defs.' Stmt. at ¶¶ 24-26 ; Pl.'s Stmt. at ¶¶ 24-26).

Plaintiff began working at Taft Middle School in 2008, after being hired by the Principal of Taft, Naomi Lewis. (*Id*. at 27-30). Lewis is African American. (Defs.' Stmt. at ¶ 5; Pl.'s Stmt. at ¶ 5). While at Taft, Plaintiff worked as a resource room teacher for special education. (Defs.' Stmt. at ¶ 31; Pl.'s Stmt. at ¶ 31).

In 2010, Taft's name changed to the Detroit School of Arts West, Langston Hughes Campus, commonly referred to as "DSA-West." (Pl.'s Dep. at 31). When the school's name changed, Angela Broaden, who is African American, became the new Principal. (*Id*. at 32). Plaintiff remained at Taft / DSA-West until December 6, 2010. (*Id*. at 31).

**Plaintiff's Testimony Regarding Disparate Treatment**

Plaintiff's Amended Complaint alleges disparate treatment in her employment, based upon her race. During her deposition,[1] Plaintiff was asked to identify how she believes she was discriminated against because of her race. Plaintiff testified that her race discrimination claim is based on the following incidents: 1) not being given a code for making copies until she had been at Taft for several months (Pl.'s Dep. at 162-64); 2) being locked out of another teacher's classroom (Pl.'s Dep. at 170); 3) being talked to in an unprofessional manner by others, in front of students and staff (Pl.'s Dep. at 167); 4) Lewis, the principal at Taft, "putting more kids in

---

[1]Plaintiff was represented by counsel during her deposition.

[her] class when they weren't supposed to be there" (Pl.'s Dep. at 168); and 5) being written up by Broaden for releasing her students early.

With respect to this last incident, Plaintiff being written up for releasing her students early, the undisputed facts are as follows.

On September 6, 2011, Plaintiff returned to DPS at DSA West. (Defs.' Stmt. at ¶ 71 ; Pl.'s Stmt. at ¶ 71 ). At that time, Plaintiff was working as a special education teacher assigned to a self-contained classroom. (Defs.' Stmt. at ¶ 72; Pl.'s Stmt. at ¶ 72). Defendant Angela Broaden, an African American, was the Principal for DSA West and was Plaintiff's supervisor. (Defs.' Stmt. at ¶ 7; Pl.'s Stmt. at ¶ 7 ).

It is undisputed that on November 3, 2011, there was a protest outside of DSA-West. (Defs.' Stmt. at ¶ 90 ; Pl.'s Stmt. at ¶ 90 ). The protest involved parents complaining about Broaden and other issues at DSA West. (Defs.' Stmt. at ¶ 92; Pl.'s Stmt. at ¶ 92).

On the day of the protest, "[a]fter Plaintiff released her students before the end of the school day" Broaden "called Plaintiff and her students back into the building and told Plaintiff that she needed to wait until the very end of the day to release Plaintiff's students." (Defs.' Stmt. at ¶ 95; Pl.'s Stmt. at ¶ 95 ). Broaden later issued Plaintiff a written "Work Rule Violation" Notice for Plaintiff's conduct on November 3, 2011. (Defs.' Stmt. at ¶ 96 ; Pl.'s Stmt. at ¶ 96; Exhibit P to Defs.' Stmt.). That document stated:

> Ms. Lossia, on Thursday, November 03, 2011, you were told not to dismiss your children early. I observed you dismissing at 2:20 pm on Thursday, November 3, 2011 and school dismisses at 2:27 pm. When I told you to bring them back and dismiss at 2:27 pm, I observed you walk out of the building and tell your students to come back into the building and then walk east down the walkway and speak to someone. At that time your students were unsupervised. I had to find your aide to assist in supervising your students until you decided to come back into the building and properly dismiss the students.

7

Under no circumstance should students be left unattended and allowed to roam the halls, and leave the building before dismissal.  This is considered a work rule violation, which is listed below:

•        Work Rule#3 Employee must observe working hour schedules (start time, quitting time, and lunch hour and preparation periods).

Ms. Lossia, failure to comply with the Detroit Pubic Schools work rules may result in further disciplinary action.

(Exhibit P to Defs.' Stmt.).

During her deposition, Plaintiff testified that other special education teachers released their students early without consequence.  (Defs.' Statement at ¶ 98; Pl.'s Stmt. at ¶ 98). Plaintiff did not, however, provide the names of any special education teachers who released their students early without consequence, nor did she testify as to the race of such persons.

**Plaintiff's Testimony Regarding Her Alleged Hostile Work Environment**

Plaintiff testified that, beginning in October of 2008, another special education teacher, Cynthia Curry, referred to her as "the White Lady" and/or "the White Teacher" when speaking to students.  (Pl.'s Dep. at 113-114 & 118).  Plaintiff testified that she had "very little contact with Ms. Curry" and she did not know how many times Curry made such comments.  (Pl.'s Dep. at 114-115).  Plaintiff testified that she told Lewis about Curry's comments but Lewis told Plaintiff "she wasn't getting involved."  (*Id.*).

Plaintiff claims that, on one occasion during the 2008-2009 school-year, she overheard Lewis say to a parent that "White people are always trying to fix the black people."  (Pl.'s Dep. at 102; Defs.' Stmt. at ¶ 128; Pl.'s Stmt. at ¶ 128).  Plaintiff complained to Mary Anderson about this comment and Curry's comments.  Plaintiff testified that Anderson told her she had called Lewis and Curry downtown because of the complaint and that she spoke to them and explained

8

the district's policies and had them sign an acknowledgment of them. (*Id*. at 109). After Anderson spoke to Lewis, Plaintiff never heard Lewis make another discriminatory remark or mention race again. (Pl.'s Dep. at 109-110).

Ramon Jones, an African American, was the Assistant Principal for DSA West during the 2010-2011 school year. (Defs.' Stmt. at ¶ 8; Pl.'s Stmt. at ¶ 8). Plaintiff claims that Jones made a joke about race during a staff meeting following the election of President Obama. Specifically, Plaintiff claims that Jones made a joke about black people being able to come through the front door instead of the back door now that President Obama was elected. (Defs.' Stmt. at ¶ 133; Pl.'s Stmt. at ¶ 133).

Plaintiff testified that another teacher, Ms. Johnson, called Plaintiff a "White Republican" while in a meeting in Lewis's office. (Defs.' Stmt. at ¶135; Pl.'s Stmt. at ¶ 135). Plaintiff testified that Lewis did "tell her to stop all that type of discussion and speak in a better manner." (Pl.'s Dep. at 168). Plaintiff also claims that Johnson asked her class "Who do you like better, the White lady" as well as "Do you like it when the White lady is in here?" (Defs.' Stmt. at ¶ 136; Pl.'s Stmt. at ¶ 136).

Plaintiff claims that another teacher, Ms. Wallace, referred to her as "The White Teacher" or "The White Lady" on three or four occasions. (Pl.'s Dep. at 129). Plaintiff testified that she did not ever complain to Lewis about Wallace's comments because she did not think it would do any good. (*Id*. at 131). Plaintiff testified that she did not ever complain to human resources or central administration regarding Wallace's comments because "[i]t didn't seem to be doing any good. If that was the worse [sic] thing that happened to me, it wasn't that bad, I guess." (*Id*. at 132).

9

**Standard Of Decision**

"A motion for summary judgment permits a movant to challenge the opposing party to present its evidence on a critical issue." *Harvey v. Campbell Cty, Tennessee*, 453 Fed. App'x 557, 561 (6th Cir. 2011) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)). The movant bears the initial burden of "pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Id.* Thereafter, the claim will only survive summary judgment if the nonmovant can adduce sufficient evidence in support of the claim. *Id.*

**ANALYSIS**

**I.      Plaintiff's Race Discrimination Claims Based On Disparate Treatment**

The Sixth Circuit applies the same standard to Title VII and ELCRA race discrimination claims. *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999).

At the summary judgment stage, a plaintiff must adduce either direct or circumstantial evidence to prevail on her discrimination claim. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004).

Here, Plaintiff has come forward with no direct evidence that supports her claims. She must therefore rely on circumstantial evidence.

"The three-step framework developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), guides the analysis of discrimination claims based upon circumstantial evidence." *Chattman v. Toho Tenaz America, Inc.*, 686 F.3d 339, 347 (6th Cir. 2012) (citing *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). First, the burden is on the plaintiff to demonstrate a prima facie case of race discrimination. If she does so, then

10

the burden shifts to the defendant to offer a legitimate, non-discriminatory explanation for its actions. If the defendant does so, then the burden shifts back to the plaintiff to show pretext. *Id*.

### A.    Prima Facie Case

To make a prima facie case of race discrimination based on disparate treatment, the plaintiff must prove: 1) that she is a member of a protected racial class; 2) that she suffered an adverse employment action; 3) that she was qualified for the position; and 4) that she was treated differently from similarly situated members of the unprotected class.

#### 1.    Protected Class And Qualified Are Not In Dispute

Here, Defendants do not dispute that Plaintiff, a Caucasian, is a member of a protected racial class; nor do they contend that she was not qualified for the various positions she has held with the DPS. Thus, the first and third elements of a prima facie case are not in dispute.

#### 2.    Adverse Actions

It is apparent from the parties' briefs and Plaintiff's deposition testimony that Plaintiff asserts that she suffered numerous "adverse employment actions" such as: 1) not being given a code for making copies until she had been at Taft for several months (Pl.'s Dep. at 162-64); 2) being locked out of another teacher's classroom (Pl.'s Dep. at 170); 3) being talked to in an unprofessional manner by others, in front of students and staff (Pl.'s Dep. at 167); 4) Lewis, the principal at Taft, "putting more kids in [her] class when they weren't supposed to be there." (Pl.'s Dep. at 168); and 5) being written up by Broaden for releasing her students early.

Although their brief does not focus on this element, Defendants do contend that many of the incidents Plaintiff complains of simply do not constitute adverse actions. The Court agrees.

For example, two of the incidents that Plaintiff complains of are that: 1) Plaintiff was

11

locked out of another teacher's classroom; and 2) a delay in Plaintiff receiving a code for making copies while employed at Taft.

"An adverse employment action requires a materially adverse change in the terms and conditions of employment." *Watson v. City of Cleveland*, 202 Fed. App'x 844, 854 (6th Cir. 2006). "A 'bruised ego' or a 'mere inconvenience or an alteration of job responsibilities' is not sufficient to constitute an adverse employment action." *Spees v. James Marine, Inc.,* 617 F.3d 380, 391 (6th Cir. 2010).; *see also O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004) (explaining that "not everything that makes an employee unhappy is an actionable adverse action."). Rather, "[a]dverse employment actions are typically marked by a 'significant change in employment status' including 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Spees,* 617 F.3d at 391.

The Court fails to see how being locked out of another teacher's classroom, or a delay in receiving a code for making copies, could constitute adverse employment actions under the applicable standard. Nevertheless, because Defendants' main challenge is to the fourth and final element, the Court need not analysis each alleged adverse action.

### 3.    Identification Of Similarly-Situated Non-Protected Employee

The fourth element of a prima face case of disparate treatment requires that the Plaintiff establish that she was treated differently from similarly-situated members of the unprotected class. In order to be deemed "similarly situated", the "individuals with whom the plaintiff seeks to compare her treatment must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating

12

circumstances that would distinguish their conduct or the employer's treatment of them."

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

In their Motion for Summary Judgment, Defendants assert that Plaintiff cannot establish a prima facie case of racial discrimination because Plaintiff cannot establish that she was treated any differently than any similarly-situated employees outside of her protected class. That is, that Plaintiff cannot establish that she was treated less favorably than non-Caucasian special education teachers.

In response to Defendants' properly-supported Motion for Summary Judgment, Plaintiff asserts that she can identify other similarly situated employees who were treated differently than her with respect to one[2] of her claimed adverse actions – her having received a Work Rule Violation Notice after letting her students out early. (*See* Pl.'s Br. at 13-14).

Plaintiff claims that "multiple other teachers under the supervision of Broden had let their students out ahead of time. These teachers were African American, with the exception of Mary Popielarz." (*Id.*). Plaintiff does not, however, identify the name of any non-protected employee (i.e., African American) who was supervised by Broaden and was not disciplined, despite Broaden having been aware that they let their students out early. Nor does Plaintiff direct the Court to any evidence to establish that any non-protected special education teacher was not disciplined, despite having let their students out early.[3]

_____

[2]Plaintiff's brief does not assert that she can establish that any similarly-situated non-protected employees were treated more favorably than her with respect to any of the other incidents that she claims constitute adverse actions.

[3]Plaintiff did submit an Affidavit from Mary Popielarz, who states that she was " not disciplined for releasing my class early on November 3, 2011". (Exhibit H to Pl.'s Br.). As

In addition, even if she had, the Court doubts that would suffice here. In the disciplinary context, the Sixth Circuit has held that to be found similarly situated, the plaintiff and her "proposed comparer" must have engaged in acts of "comparable seriousness." *Martinez v. Cracker Barrel Old Country Store, Inc.*, __ F.3d __, 2013 WL 115587 (6th Cir. Jan. 10, 2013). Plaintiff's conduct that was the subject of the Work Rule Violation Notice at issue went beyond releasing her students early. The notice reflects that: 1) Plaintiff released her students early on a day where a protest was going on outside of the school; 2) and, after Broaden told Plaintiff to bring the students back and not to release them until the end of the day, Plaintiff brought the students back into the building but left them unattended in the building.

Accordingly, the Court concludes that Plaintiff has failed to establish a prima facie case of disparate treatment based on race. The Court shall grant summary judgment in favor of Defendants with respect to Counts II and V, as well as any portion of other counts that purport to assert a race discrimination claim based on disparate treatment.[4]

## II.    Plaintiff's Hostile Work Environment Claims

In order to survive a motion for summary judgment on a hostile work environment claim, a plaintiff must establish: 1) she is a member of a protected class; 2) she was subjected to

---

Plaintiff acknowledges, however, Popielarz is Caucasian. Thus, Popielarz is not a comparable non-protected employee.

[4]Given this ruling, the Court need not address Defendants' additional challenges to Plaintiff's disparate treatment claims that relate to pretext.

14

unwelcome harassment based on race; 3) the harassment had the effect of unreasonably interfering with her work performance and creating an objectively intimidating, hostile, or offensive work environment; and 4) there exists some basis for liability on the part of the employer. *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009).

The third element requires a plaintiff to show that the workplace was permeated with harassment that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). In evaluating whether discriminatory conduct meets this standard, the court looks to the totality of the circumstances, which includes: 1) the frequency of the discriminatory conduct; 2) whether it is physically threatening or humiliating, or a mere offensive utterance; and 3) whether it unreasonably interferes with an employee's work performance. *Id.*

Defendants contend that the conduct alleged here simply does not rise to the level of creating a hostile work environment based on race. The Court agrees.

The incidents that form the basis of Plaintiff's hostile work environment claim are a handful of sporadic verbal comments made over the course of approximately four years. Plaintiff was never physically threatened or humiliated. To the contrary, the verbal comments of which she complains consist of mere offensive utterances (ie., being referred to as "the White Lady" or overhearing that "White people are always trying to fix the black people") and a politically-incorrect joke or comment. Moreover, Plaintiff has not established that the conduct she now complains of interfered with her work. Plaintiff herself testified that one reason she did not complain about such comments was that she did not consider them "that bad." (Pl.'s Dep. at

15

132) ("If that was the worse [sic] thing that happened to me, it wasn't that bad, I guess.").

The facts alleged by Plaintiff are not sufficient "to meet the high standard the Supreme Court has set for such claims." *Ross v. Michigan State Univ. Bd. Of Trustees*, 2012 WL 3240261 (6th Cir. June 20, 2012) (citing *Faragher, supra*).

### III.    Plaintiff's Retaliation Claims

Plaintiff's Amended Complaint asserts retaliation claims against Defendants under Title VII (Count III), the ELCRA (Count VI), the ADA (Count VII), the PWDCRA (Count VIII), the Rehabilitation Act (Count IX), and Michigan's Whistleblower's Protection Act (Counts XII & XIII).

Retaliation claims follow the same three-step burden-shifting framework developed in *McDonnell Douglas.  See, e.g.,Taylor v. Geithner*, __ F.3d __, 2013 WL 11673 at *5 (6th Cir. Jan. 3, 2013).  If a plaintiff establishes a prima facie case of retaliation, then the defendant must articulate a legitimate, non-retaliatory reason for the adverse action.  If the defendant does so, the plaintiff must establish that the stated reason for the adverse action is a pretext for unlawful retaliation. *Id.*

In order to establish a prima facie case of retaliation under any of the above statutes, Plaintiff must show: 1) that she engaged in activity protected by the statute; 2) the protected activity was known by Defendants; 3) Defendants took actions adverse to Plaintiff; and 4) that there was a causal connection between the protected activity and the adverse action.  *See, e.g., Taylor v. Geithner*, __ F.3d __, 2013 WL 11673 at *5 (6th Cir. Jan. 3, 2013) (Title VII); *Steward v. New Chrysler*, 415 Fed. App'x. 632, 643-44 (6th Cir. 2011) (ADA and Michigan's PWDCRA); *Shallal v. Catholic Soc. Servs. of Wayne Cty.*, 455 Mich. 604, 617 (1997)

(Michigan's Whistleblowers' Protection Act); *Galeski v. City of Dearborn*, 435 Fed. App'x 461, 469 n.6 (6th Cir. 2011) (Michigan's ELCRA); and *Gribcheck v. Runyon*, 345 F.3d 547, 550 (6th Cir. 2001) (Rehabilitation Act).

In order to establish a causal connection, a plaintiff must produce sufficient evidence from which one could draw an inference that the employer would not have taken the adverse action against the plaintiff had the plaintiff not engaged in protected activity. *Taylor, supra,* at *8.  One common way by which a plaintiff can demonstrate a causal connection is to show close temporal proximity between the adverse action and the protected activity.  *Id.*

In their Motion for Summary Judgment, Defendants note that the same incidents that form the basis of Plaintiff's racial discrimination claims also form the basis for her retaliation claims.  (Defs.' Stmt. at ¶ 140; Pl.'s Stmt. at ¶ 140).  Defendants assert that Plaintiff cannot establish a prima facie case of retaliation because she cannot establish the fourth element – that there was a causal connection between any protected activity and any claimed adverse action. Defendants state that "[w]hile Plaintiff may identify numerous examples where she engaged in protected activity, she fails to connect any of those examples to any adverse employment action taken by Defendants."  (Defs.' Br. at 22).

In response, Plaintiff does not identify the protected activity that forms the basis of any of her various retaliation claims, nor does she identify the adverse action that was allegedly taken by Defendants following protected activity.  Without more, Plaintiff asserts that she can establish a causal connection between some protected activity and some adverse employment action because she "discovered that Defendants encouraged a false police report to be filed against Plaintiff.  See, Exhibit M, Affidavit of Darryl Cammon, all paragraphs of which are relevant to

17

Plaintiff's argument."  (Pl.'s Br. at 16).

Plaintiff directs the Court to a seventy-one paragraph affidavit from Darryl Cammon to support her assertion that Defendants encouraged a false police report to be filed against her. There are numerous problems with this affidavit, including hearsay within hearsay, conclusory statements with no factual support, etc.  More importantly, however, Plaintiff does not connect the alleged encouragement of the filing of a police report to any protected activity by Plaintiff. Thus, in response to Defendants' properly-supported Motion for Summary Judgment, Plaintiff has not met her burden of establishing a prima facie case of retaliation.

In addition, even if she had, Plaintiff has failed to establish that Defendants' legitimate, non-retaliatory reasons for the various actions it took are a pretext for illegal retaliation.  (*See* Pl.'s Br. at 16).

As such, the Court shall grant summary judgment in favor of Defendants with respect to Plaintiff's retaliation claims.

## IV.   Plaintiff's First Amendment And Due Process Claims

Plaintiff's Amended Complaint asserts both First Amendment and Due Process claims. Defendant seeks summary judgment as to both claims, on multiple grounds.  As shown below, however, the Court need not analyze each of the challenges made by Defendants because Plaintiff now agrees that her Due Process claim should be dismissed and because her First Amendment claim can be easily disposed of.

### A.   First Amendment Retaliation Claim

Count X of Plaintiff's Amended Complaint asserts the following claim: "First Amendment Violation (42 USC § 1983) Against All Defendants" (Count X).

18

Defendants' motion asserts that Plaintiff's First Amendment retaliation claim fails as a matter of law for multiple reasons, including that: 1) Plaintiff cannot establish, as a threshold matter, that she engaged in constitutionally protected conduct; 2) even if she could, her interests in the speech were outweighed by Defendants' interests in the efficient operation of the District; 3) Plaintiff cannot establish a casual connection between any protected speech and any adverse action taken against her; 4) the individual Defendants are entitled to qualified immunity; and 5) Plaintiff cannot pursue this claim against the DPS or the Board because Plaintiff cannot identify an official policy or custom that caused her alleged injuries.  (*See* Defs.' Br. at 23-32).

The Court need not analyze all of the above grounds because Plaintiff has not, as a threshold matter, presented any evidence to indicate that she engaged in constitutionally protected speech.

"In order to survive summary judgment on a First Amendment retaliation claim, Plaintiff must **present sufficient evidence** to create a triable issue of fact as to each of the following elements:" 1) Plaintiff engaged in constitutionally protected conduct; 2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) the adverse action was motivated at least in part by Plaintiff's protected conduct.  *Leavey v. City of Detroit*, 467 Fed. App'x 420, 427 (6th Cir. 2012) (emphasis added).

In response to Defendants' motion, Plaintiff claims that some unspecified comments she made about "classroom safety" in an unidentified media source, on an unspecified date, is the constitutionally protected speech that forms the basis for her claim.  In response to a properly-supported Motion for Summary Judgment, however, Plaintiff has to go **beyond allegations** and

19

must present **evidence** to establish that she engaged in constitutionally-protected speech.  *See, e.g., Harvey*, 453 Fed. App'x at 561-62 (explaining that, in response to a properly-supported motion for summary judgment, the nonmovant must produce evidence in support of an essential element of her claim).  Plaintiff[5] has not done so here because she has not directed the Court to any evidence regarding her alleged comments to the unidentified media source

Accordingly, the Court shall grant summary judgment in favor of Defendants as to Plaintiff's First Amendment retaliation claim.

### B.    Due Process Claim

Count XI of Plaintiff's Amended Complaint asserts the following claim: "Fourteenth Amendment Violation (42 USC § 1983) Against Detroit Public Schools, Detroit Board Of Education, Naomi Lewis, Gladys Wallace, And Laurie Washington" (Count XI).  Defendants' Motion for Summary Judgment asserts that count should be dismissed on several grounds.  (*See* Defs.' Br. at 32-33).  In response, Plaintiff states that she agrees to dismiss her Due Process Claim.  (*See* Pl.'s Resp. Br. at 4, 11 & 19).  Accordingly, the Court shall dismiss Count XI with prejudice.

## V.    Plaintiff's Wage Claims

Plaintiff's Amended Complaint includes the following two counts:  "FLSA Against Detroit Public Schools, Detroit Board Of Education, Defendant Angela Broaden And Felecia Baker" (Count XIV); and "MMWA Against Detroit Public Schools, Detroit Board Of Education, Defendant Angela Broaden and Felecia Baker" (Count XV).  Defendants' Motion for Summary

---

[5]Plaintiff's "status as a *pro se* litigant does not alter h[er] duty on a motion for summary judgment." *Viergutz v. Lucent Tech.*, 375 Fed. App'x 482,485 (6th Cir. 2010).

Judgment seeks dismissal of both of these claims.  (*See* Defs.' Br. at 34).  In response, Plaintiff

states that she agrees to dismiss her "Fair Labor Standards Act and Minimum Wage Law

claims."  (Pl.'s Resp. Br. at 4 & 11).  Accordingly, the Court shall dismiss Counts XIV and XV

with prejudice.

## CONCLUSION & ORDER

For the reasons above, the Court shall GRANT Defendants' Motion for Summary

Judgment and dismiss all claims asserted in this action with prejudice.

IT IS SO ORDERED.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  January 31, 2013

I hereby certify that a copy of the foregoing document was served upon Evelyn Lossia and
counsel of record on January 31, 2013, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager